IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SANG LEE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:19-CV-321-L** |
| | § | |
| **LIBERTY INSURANCE** | § | |
| **CORPORATION and DAVID YOON**, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Defendant Liberty Insurance Corporation's ("Liberty" or "Defendant") Motion for Summary Judgment (Doc. 32), filed January 6, 2021; Defendants Liberty and David Yoon's Motion to Dismiss David Yoon with Prejudice ("Defendants' Motion to Dismiss") (Doc. 38), filed January 21, 2021; Plaintiff Sang Lee's Motion for Partial Summary Judgment (Doc. 45), filed January 27, 2021; and Plaintiff's Motion for Leave to File Supplemental Response ("Motion for Leave") (Doc. 66), filed June 7, 2021.

After considering the parties' motions, briefs, admissible summary judgment evidence, file, record, and applicable law, the court **grants** Plaintiff's Motion for Leave to File Supplemental Response (Doc. 66) and **directs** the clerk of the court to file as a separate document Plaintiff's Supplemental Response (Doc. 66-2); **grants** Defendants' Motion to Dismiss (Doc. 38) and **dismisses with prejudice** all claims against David Yoon; **grants in part** Liberty's Motion for Summary Judgment (Doc. 32) and **dismisses with prejudice** all claims asserted against Liberty, *except for Plaintiff's fraudulent inducement claim*; and **denies** Plaintiff's Motion for Partial Summary Judgment (Doc. 45).

**Memorandum Opinion and Order – Page 1**

I.        **Factual and Procedural Background**[1]

Sang Lee ("Mr. Lee" or "Plaintiff") originally filed this action on January 2, 2019, against Liberty and David Yoon ("Defendants"), asserting claims for breach of contract, alleged violations of the Texas Deceptive Trade Practices Act ("DTPA"); breach of the common law duty of good faith and fair dealing; breach of the Texas Prompt Payment of Claims Act ("TPPCA"); breach of express or implied warranty; and fraud. Mr. Lee's claims arise from Liberty's allegedly wrongful denial or underpayment of his claim to recover benefits under a homeowners' insurance policy ("the Policy") for weather related damages to his house located at 202 Old Gate Lane, Sunnyvale, Texas ("Property").

Mr. Lee reported the claim to Liberty on June 13, 2017, and Liberty sent adjuster David Yoon ("Mr. Yoon") to inspect the Property on June 22, 2017.  That same day, Mr. Yoon prepared an estimate of the damage that totaled $19,779.34 for replacement cost value ("RCV") and $17,429.47 for actual cost value ("ACV").   After deducting depreciation ($2,349.87) and the Policy deductible ($3,548) from the RCV of $19,779.34, Liberty issued a payment of $13,881.47 to Mr. Lee on June 22, 2017, and sent a letter to him explaining how his "payment for covered damages was calculated." Def.'s Summ. J. App. 18.  Mr. Lee contends that this payment by Liberty amounts to a wrongful denial of his claim because he ultimately had to pay a contractor more than this amount to repair the damage to his Property.  He also contends that Liberty's "June 22, 2017 denial letter failed to give the reasons for rejecting [his] claim."  Pl.'s Summ. J. Resp. App. 25 ¶ 3.

---

[1] Unless otherwise stated, the facts referenced herein are undisputed.

There is no evidence that Mr. Lee disputed the $13,881.47 payment or requested additional money under his Policy before June 18, 2018, when his contractor Ridgestone Restoration, LLC (Ridgestone") submitted a "Supplement[al] Request and . . . "Final Invoice" to Liberty on June 18, 2018, for $5,220.33 in additional or supplemental costs not covered by Liberty's first payment. Def.'s Summ. J. App. 3, 20-22.  Mr. Lee states in conclusory fashion in his declaration that he "complained to Liberty . . . but his complaints were ignored"; however, he does not indicate when he complained to Liberty or explain the nature of his complaint. Pl.'s Summ. J. Resp. App. 25 ¶ 3.

After reviewing the documentation provided by Ridgestone, Liberty agreed that more was owed.  On June 29, 2018, Liberty issued a second payment to Mr. Lee in the amount of $2,807.05. In a letter on the same date, Liberty explained that this "payment for covered damages was calculated" using an increased estimate of $20,236.52 (RCV) and $17,832.36 (ACV) and subtracting depreciation ($2,404.16), the Policy deductible ($3,548), and the prior payment ($13,881.47) from the revised RCV of $20,236.52.  *See* Def.'s Summ. J. App. 3, 22-23.  Plaintiff subsequently brought this action against Liberty and Mr. Yoon in the 44th Judicial District Court, Dallas County, Texas.  It is not clear from the admissible summary judgment evidence what transpired in the several months between June 29, 2018, when Liberty made the second payment to Mr. Lee after the repairs to his Property were completed, and January 10, 2019, when Liberty was served with a citation and copy of Plaintiff's Original Petition in the underlying state court action.

The Appraisal Award issued on December 7, 2020, after both appraisers signed the award. On December 14, 2020, Liberty forwarded a check to Mr. Lee's attorney in the amount of $5,883.43 for next day delivery and received confirmation the following day that the letter was delivered.  *Id.* at 34, 42-46.  On January 14, 2021, Mr. Lee's attorney rejected and returned the

payment, arguing that it was only a "partial payment" that it did not account for penalty interest and attorney's fees that Plaintiff was entitled to under the TPPCA.  Pl.'s Summ. J. Resp. App. 29, 34.

Notwithstanding the $24,589.42 (RCV) Appraisal Award, Mr. Lee continues to maintain that he spent $25,257.95 to repair the storm damage to his Property, and he contends that Liberty failed to attempt in good faith to settle his claim quickly by not paying this amount in June 2017. *Id.* at 25-26.  In addition, he states in his declaration that Liberty has yet to pay him for costs he incurred in the amount of $4,209.66 (the amount of his contractor's overhead and profit) and "$1,500 for pre-appraisal damage assessments."  *Id.* at 26.

On February 8, 2019, Liberty removed the action to federal court based on diversity jurisdiction. On January 6, 2021, Liberty moved for summary judgment on all of Plaintiff's claims. On January 21, 2021, Defendants moved to dismiss all claims against insurance agent David Yoon based on Liberty's formal, written notice to Plaintiff of its election to accept whatever liability Mr. Yoon might have to Plaintiff.  Plaintiff did not respond to the motion to dismiss Mr. Yoon.  On January 27, 2021, Plaintiff moved for summary judgment on his TPPA claim.

In February 2020, the parties engaged in settlement discussions in an attempt to resolve the difference between what Liberty had paid to date and what Plaintiff contended was still owed under the Policy (approximately $5,000, plus attorney's fees and expenses).  On February 18, 2020, Liberty demanded that Plaintiff select an appraiser in accordance with the Policy within twenty days.  Plaintiff did not designate an appraiser until April 20, 2020, after the court entered an order on April 18, 2020, granting Liberty's March 4, 2020 motion for abatement of the case pending completion of the appraisal process, which was opposed by Plaintiff.  Def.'s Summ. J. App. 40.

**Memorandum Opinion and Order – Page 4**

On June 7, 2021, approximately four months after briefing on the parties' summary judgment motions was complete, Plaintiff moved for leave to file a supplemental response to Liberty's summary judgment motion to address the effect of recent Texas Supreme Court authority on his TPPA claim. Liberty opposes the motion for leave.

## II.     Defendants' Motion to Dismiss (Doc. 38)

Defendants contend that all claims against Mr. Yoon should be dismissed with prejudice in light of Liberty's written notice to Plaintiff regarding its election to accept whatever liability Mr. Yoon might have to Plaintiff.  Defendants contend that, under Texas law, and in particular under Texas Insurance Code § 542A.006(b), after such an election, "no cause of action exists against the agent."  Defendants, therefore, assert that no cause of action exists against Mr. Yoon, as Liberty's insurance agent.  The court agrees. As noted, Plaintiff did not respond to the motion to dismiss, and the court determines that Defendants are entitled to dismissal of Plaintiff's claims against Mr. Yoon for the reasons stated in their motion.  Accordingly, the court **grants** Defendant's Motion to Dismiss (Doc. 38) with respect to Mr. Yoon and **dismisses with prejudice** all claims asserted against him by Plaintiff in this action.

## III.    Liberty's Motion for Summary Judgment (Doc. 32)

Liberty contends that it is entitled to summary judgment on Plaintiff's breach of contract claim and all of his remaining claims, which it refers to collectively as Plaintiff's extra-contractual claims. Liberty contends that its payment of the appraisal award estops Plaintiff from maintaining a contract claim against it. Liberty further asserts that Plaintiff's remaining extra-contractual claims fail because: (1) generally, there can be no extra-contractual claims without a breach of contract; (2) Plaintiff has not suffered an independent injury beyond the loss of benefits under the Policy; and (3) Liberty's pre-appraisal payment was timely and reasonable.

A.       Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita*, 475 U.S. at 587.  (citation omitted).  Mere conclusory allegations are not

competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### B.    Discussion

Before discussing Liberty's grounds for summary judgment, the court addresses Plaintiff's objections to Liberty's summary judgment evidence and other evidentiary issues.

#### 1.    Objections to Summary Judgment Evidence and Other Evidentiary Issues

##### a.    Plaintiff's Objections

Plaintiff objects to paragraphs five through seven of the declaration submitted by Mr. Yoon in support of Liberty's summary judgment motion. Plaintiff contends that Mr. Yoon's statements in these paragraphs are not competent summary judgment evidence because they are "conclusory

with no underlying facts to support the subjective beliefs." Pl.'s Summ. J. Resp. 8. In addition, Plaintiff contends that the declaration is unsworn. Liberty disagrees and so does the court.

Mr. Yoon's declaration consists of seven paragraphs. He states as follows in paragraphs five through seven:

> 5. I am aware that Plaintiff first reported the claim to Liberty on or about June 13, 2017. I conducted an initial inspection of the Property on June 22, 2017. Based on my observations, I prepared an estimate that totaled for $19,779.34 (RCV) [and] $17,429.47 (ACV). The same day, June 22, 2017, after deducting depreciation and deductible, payment in the amount of $13,881.47 was issued and a letter was sent to Plaintiff explaining the payment[.]
>
> 6. On June 18, 2018, Plaintiff's contractor emailed Liberty, advising that work was complete, and he attached a supplement request and "final invoice." The invoice was for $5,220.33, which allegedly constituted the difference between Liberty's RCV estimate and the contractor's "current" estimate.
>
> 7. Liberty promptly reviewed the documents provided by Plaintiff's contractor, and agreed to include additional amounts, for a total of $20,236.52 (RCV) [and] $17,832.36 (ACV). After subtracting depreciation and deductible in accordance with the Policy, the resulting supplemental payment to Plaintiff totaled $2,807.05. Th[is] payment was issued on June 29, 2018, and provided the supplemental worksheet to Plaintiff.

Def.'s Summ. J. App. 2-3 (Doc. 34).

Federal Rule of Civil Procedure 56 provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence" at trial. Fed. R. Civ. P. 56(b)(2). Rule 56(b)(4) further provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Plaintiff is correct that conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Eason*, 73 F.3d at 1325; *Forsyth*, 19 F.3d at 1533. The statements objected to in Mr. Yoon's declaration,

however, are not conclusory or unsubstantiated.  Moreover, Mr. Yoon states that these statements and other facts in his declaration are within his personal knowledge based on his position as Liberty's Senior Field Claim Resolution Specialist and his familiarity with the claim reported by Mr. Yoon on June 2, 2017, that is the subject of this lawsuit, to recover benefits under the Policy for damage to his Property. He also states that all statements in his declaration are true and correct and made under penalty of perjury, which is required under 28 U.S.C. § 1746(2).  The statements in his declaration are, therefore, competent summary judgment evidence, and the court **overrules** Plaintiff's objections.

### b.      Other Evidentiary Issues

Liberty and Plaintiff both submitted affidavits by their respective attorneys in connection with Liberty's summary judgment motion.  With some exceptions, for example, pertaining to attorney's fees, evidence by attorneys of record in a case cannot be considered in ruling on the parties' claims and defenses because of the prohibition against lawyers acting as advocates and witnesses regarding contested matters.  *See FDIC v. United States Fire Ins. Co*., 50 F.3d 1304, 1311 (5th Cir. 1995) ("The proscription against an attorney serving as both an advocate and a witness in the same litigation is a long-standing ethical rule.").  Although neither party objected to the affidavits submitted by opposing counsel, the court has concerns regarding the admissibility of some of the statements in Plaintiff's counsel's affidavit, as well as statements in the attorneys' letters that are attached as exhibits to the affidavits.

Specifically, Plaintiff's attorney Clifford K. Nkeyasen ("Mr. Nkeyasen") states in his affidavit:

> 4. On August 9, 2018, Mr. Lee incurred $1,500 in pre-appraisal damage assessments paid to Aldo Arangua to determine the reasons for Defendant's rejection of Mr. Lee's claim. This expense would not have been incurred if Defendant detailed the reasons for its rejection of Mr. Lee's claim in writing as

> required by § 542.056 of the Texas Insurance Code and the insurance policy. These
> expenses are not policy benefits or attorney's fees and were an independent injury
> caused by Defendant's breach of contract and violation of the Texas Insurance
> Code.

Pl.'s Summ. J. Resp. App. 28 (Doc. 50).  Mr. Nkeyasen's statements in this paragraph violate the

the prohibition against lawyers acting as witnesses regarding contested matters because Plaintiff

relies on these statements in an attempt to raise a genuine dispute of material fact as to whether

$1,500 in "pre-appraisal damage assessments" constitutes "a breach [of the Policy] separate from

the initial evaluation," and he contends that such evidence precludes summary judgment on his

breach of contract claim.

Mr. Nkeyasen also states in paragraphs eight and nine of his affidavit that he is the

custodian of records for his law firm; that his attached "Post-Appraisal Payment rejection letter"

is a business record; and that this letter, dated January 14, 2021, evidences his office's return of

"Defendant's partial payment of the appraisal award and penalty interest."  *Id.* at 29.  While the

parties do not appear to dispute whether or when Mr. Nkeyasen rejected or returned the payment

made by Liberty after issuance of the Appraisal Award, they do dispute whether this payment was

merely a "partial payment of the appraisal award and penalty interest" owed by Liberty.  Moreover,

Mr. Nkeyasen's letter, dated January 14, 2021, which was prepared after Liberty moved for

summary judgment on January 6, 2021, consists of nothing more than argument, much of which

is included in Plaintiff's response to Liberty's summary judgment motion.  Accordingly, the

statements in paragraphs four and ten of Mr. Nkeyasen's affidavit and his January 14, 2021 letter

are not competent summary judgment evidence.  The court, however, will consider the effect, if

any, of his statement that, "[o]n January 14, 2021, my office returned Defendant's . . . payment of

the appraisal award and interest" in the amount of $5,883.43, *id.*, because, as noted, the parties do

not appear to dispute that Mr. Nkeyasen's law firm returned or rejected this payment as of the date of his letter. *Id.*

The statements in Colin Batchelor's affidavit (Liberty's attorney) do not involve disputed matters and simply reflect what is documented in correspondence between the parties and attached as exhibits to Mr. Colin's affidavit. Plaintiff, however, does take issue with a statement by Mr. Colin in a December 14, 2020 letter to Mr. Nkeyasen, attached as Exhibit B-4 to Mr. Colin's affidavit, that the amount of interest included in Liberty's $5,883.43 payment "accounts for all potential interest owed" to Plaintiff in this lawsuit. The court, therefore, disregards this statement in ruling on Liberty's summary judgment motion.

### 2.    Breach of Contract

Liberty contends that its payment of the Appraisal Award estops Plaintiff from asserting a claim for breach of contract because, under Texas law,

> "when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is 'estopped by the appraisal award from maintaining a breach of contract claim against [the insurer].' By payment of the full amount of an appraisal award, the insurer 'complie[s] with every requirement of the contract, [and] *it **cannot** be found to be in breach*.'"

Def.'s Summ. J. Br. 7 (quoting *Anderson v. American Risk Ins. Co., Inc*., 2016 WL 3438243, at *4 (Tex. App.—Houston [1st Dist.] June 21, 2016, no pet.) (emphasis added) (citing *Breshears v. State Farm Lloyds*, 155 S.W.3d 340 (Tex. App.—Corpus Christi 2004, pet. denied)).

Plaintiff responds that Liberty has not identified any elements of his contract claim, and it cannot rely on an unpleaded estoppel defense. Plaintiff asserts that, notwithstanding the Appraisal Award, Liberty can be liable for breach of contract because an insurer can still be liable for a breach separate from the initial claim evaluation. In this regard, Plaintiff contends that Liberty

promised but failed to comply with the following provision on page four of his Policy pertaining

to its duties after loss:

> **b.** After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:
> **(1)** Within 15 "business days"; or
> **(2)** Within 30 days if we have reason to believe the loss resulted from arson;
> **c.** If we do not approve payment of your claim or require more time for processing your claim, we must:
> **(1)** Give the reason for denying your claim; or

Pl.'s Summ. J. Resp. 15 (quoting Pl.'s Summ. J. App. 10) (Doc. 50) (emphasis added by Pl.).

According to Plaintiff:

> 40.     [Liberty] failed to pay or deny the claim in writing within 15 business days and failed [t] give the reason for denying [his] claim. The June 22, 2017[] and the June 29, 2018[] letters fail to give the reasons for rejecting the $25,257.95 invoice submitted by [him]. To date, no explanation has ever been provided by [Liberty] for paying less than $25,257.95 minus the applicable deductible.
>
> 41.     Thereafter, [he] incurred $1,500 in pre-appraisal damage assessments to determine the merits of [Liberty]'s bad-faith denials of the claim which have not been paid. . . . These expenses would not have been incurred if [Liberty] did not breach its duties under the [P]olicy.
>
> 42.     [Liberty] is liable on a breach separate from the initial valuation and [he] has suffered actual damages in the amount of $1,500, thus [Liberty] is not entitled to summary judgment on [his] breach of contract claim.

Pl.'s Summ. J. Resp. 15-16 (citing Pl.'s App. 18, 22, & 28 ¶ 4).

These contentions by Plaintiff are insufficient to raise a genuine dispute of material fact in

response to Liberty's estoppel argument to his breach of contract claim.  Contrary to Plaintiff's

assertion, Liberty did plead estoppel as a defense.  On the other hand, Plaintiff's contention that

he suffered actual damages of $1,500 as the result of Liberty's contractual "breach separate from

the initial valuation" is not included in his Amended Petition *as a basis for his breach of contract claim*.[2]  Plaintiff's contract claim is pleaded in pertinent part as follows:

> 30.     When Liberty [], in determining actual cash value, excluded costs that are included in the determination of liability limits, on which Plaintiff's premium was based, it reaped an illegal windfall because Liberty [] received premium[s] on insurable values for which it never intended to pay. Defendants breached the terms of the Policy.

> 31.     Plaintiff submitted a valid claim for hailstorm and Windstorm damage [w]ithin the policy period and Liberty [] breached the contract by denying or underpaying the claim.

> 32.     As a result of [Liberty's] breach of the insurance contract, Plaintiff has incurred damages within the jurisdictional limits . . . and will continue to incur damages until the entire claim is paid, including general contractors' overhead and profit.

Pl.'s Am. Pet. ¶¶ 30-32.  Plaintiff's DTPA and TPPCA claims, as pleaded in the Amended Petition, can be construed as encompassing alleged statutory violations for Liberty's failure to promptly accept or refuse his claim and provide a "reasonable explanation" for its alleged denial of the claim, but not his breach of contract claim.  *See id.* ¶¶ 37, 46, 47.

---

[2] Except for the names of the plaintiffs, the allegations in Plaintiff's Amended Petition in this action are virtually identical to those in another recent case in which Plaintiff's attorney used the same disfavored approach of "shotgun" pleadings to assert identical claims against a different insurer based primarily on a formulaic recitation of elements and statutory language and the incorporation by reference of all allegations in the Amended Petition with respect to every claim asserted. *See Howley v. Bankers Standard Ins. Co.*, 3:19-CV-2477-L, 2021 WL 913290, at *9 (N.D. Tex. Mar. 10, 2021).  The Fifth Circuit has previously denounced what it has referred to as the "'shotgun approach' to pleadings, . . . whe[n] the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick," and it has explained that this pleading approach may be sanctionable in certain circumstances under Federal Rule of Civil Procedure 11.  *Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788-89 (5th Cir. 1986), *abrogation on other grounds recognized by Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1023-24 (5th Cir. 1994) ("Appellants sued Phillips without knowing how he fit into the picture, apparently hoping that later discovery would uncover something. If Rule 11 is to mean anything and we think it does, it must mean an end to such ['shotgun approach'] expeditionary pleadings.") (citation omitted)).  This approach to pleading claims is also discouraged by courts because it interferes with a district court's ability to manage its docket, unnecessarily impedes the orderly and efficient disposition of disputes, and wastes scarce judicial resources by causing courts to engage in the onerous task of sifting through a myriad of irrelevant allegations in ruling on the sufficiency of a claim, making it difficult to know which factual allegations were intended to support which claims for relief. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-22 & nn.9 & 12 (11th Cir. 2015) (citing *Anderson v. District Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996)); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295-96 & n.10 (citing cases); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997) (citation omitted).

It is well-established that a claim raised for the first time in the context of a summary judgment motion is "not properly before the court." *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (quoting *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). Accordingly, any summary judgment argument by Plaintiff regarding a separate breach of the Policy that is different from the breach of contract claim alleged in his Amended Petition cannot support a new breach of contract claim or raise a genuine dispute of material fact in response to Liberty's summary judgment motion with respect to Plaintiff's pleaded contract claim that is premised on Liberty's "denying or underpaying [his] claim" for covered losses under the Policy. Pl.'s Am. Pet. 6.

Even if Plaintiff had pleaded that Liberty breached the section of the Policy quoted in Plaintiff's response, this would not qualify as a separate contract claim, as any such claim—that Liberty failed to pay or deny his claim under the Policy within 15 days and provide an explanation for any alleged denial—stems or flows from his pleaded contract claim that is also premised on Liberty's failure to pay his claim under the Policy.

Moreover, although Plaintiff repeatedly characterizes Liberty's payments of benefits under the Policy as denials of his claim, the undisputed summary judgment evidence, including that relied on by Plaintiff, establishes the contrary. Pl.'s Summ. J. Resp. 16 (citing Def.'s Summ. J. App. 18 & 22). The parties disagreed about how much Mr. Lee was entitled to recover under the Policy, but Liberty never outright rejected or denied either of his requests for compensation. It was because of this disagreement that Liberty invoked the appraisal process in accordance with the Policy. Each payment by Liberty was also accompanied by a letter explaining how the payments were calculated.

**Memorandum Opinion and Order – Page 14**

In addition, Plaintiff contends that Defendant's evidence that it paid $5,883.43 after issuance of the appraisal award is not proof that it paid the full $24,589.43 appraisal award, less the deductible under the Policy.  Contrary to Plaintiff's assertion, Liberty's undisputed summary judgment evidence establishes that, in total, it paid more than the $24,589.43 Appraisal Award, less the deductible under the Policy, and Plaintiff does not point to any admissible evidence to refute this.

Plaintiff also argues, based on his lawyer's affidavit, that the $5,883.43 post-appraisal payment was "rejected" and demand was made for payment of $8,771.35 in penalty interest and $37,441.00 in attorney's fees under Texas Insurance Code § 542.060 for failure to comply with the TPPCA.  Pl.'s Summ. J. Resp. 16 (citing Pl.'s Summ. J. App. 35).[3]  As previously noted, Mr. Nkeyasen states in his affidavit, based on his January 14, 2021 letter to Liberty, that "[o]n January 14, 2021, my office returned [Liberty's] . . . payment of the appraisal award and penalty interest." Pl.'s Summ. J. Resp. App. 29.  His January 14, 2021 letter to Liberty states:  "Your . . . payment in the amount of $5,883.43 is rejected." *Id.* at 34.  Although Mr. Nkeyasen also states in his letter that he represents Mr. Lee, neither his letter nor his affidavit indicates whether Mr. Nkeyasen was authorized, on behalf of Mr. Lee, to reject payments made by Liberty or whether Mr. Lee ratified Mr. Nkeyasen's rejection of that payment.

Regardless, Plaintiff's rejection of Liberty's final payment of $5,883.43, after issuance of the December 2020 Arbitration Award, and his reasons for doing so do not justify setting aside the Arbitration Award.[4]  Additionally, "[t]ender of the full amount owed pursuant to the conditions of

---

[3] In other areas of his response, Plaintiff contends that $7,580.68 is the correct amount of penalty interest currently owed, together with $50,509 in attorney's fees, which he contends are reasonable and necessary.

[4] "[T]he reason an insured is estopped from maintaining a breach of contract claim against the insurer after receiving full payment of an appraisal award is that the very object of the binding appraisal process is to avoid litigation on the issue of damages and not to facilitate liability." *National Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 845 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citation omitted).  "Courts have thus repeatedly rejected breach of contract

an appraisal clause is [generally] all that is required to estop the insured from raising a breach of contract claim." *National Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 845 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citations omitted). "Whe[n] the insurer tenders full and timely payment of the appraisal award, the insured's rejection of the payment does not prevent estoppel." *Id.* ("[A]cceptance of the payment is not a necessary condition for estoppel."); *see also United Neurology*, 101 F. Supp. 3d at 620 (same). This is so because, as correctly noted by Liberty, when the insurer pays the full amount of an appraisal award, it "complie[s] with every requirement of the contract, [and] it cannot be found to be in breach." *Breshears*, 155 S.W.3d at 344.

Moreover, as explained by the Fifth Circuit in *Randel v. Travelers Lloyds of Texas Insurance Company*, the rule—that "the insurer's payment of the [appraisal] award bars the insured's breach of contract claim premised on failure to pay the amount of the covered loss"—"applies even when the appraisal award values the covered loss in an amount greater than the insurer had initially assessed and even when the insurer initially denies the insured's claim." *Randel*, 9 F.4th 264, 268 (5th Cir. 2021) (quoting *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 129 (Tex. 2019)). Thus, it makes no difference, for purposes of Plaintiff's breach of contract claim, whether, as Plaintiff argues, Liberty initially denied his claim or whether the amounts paid by Liberty before the December 2020 Appraisal Award were less than the amount of the Appraisal Award.

---

claims when an insurer timely paid an appraisal award," and there are only three ways under Texas law to set aside an appraisal award: "(1) when the award was made without authority; (2) when the award was made as a result of fraud, accident, or mistake; or (3) when the award was not in compliance with the requirements of the policy." *Mainali Corp. v. Covington Specialty Ins. Co*., 872 F.3d 255, 258 (5th Cir. 2017), *as revised* (Sept. 27, 2017) (citing *Franco*, 154 S.W.3d at 786). The burden of proof is on the party seeking to avoid such an award. *Lundstrom v. United Servs. Auto. Ass'n*, 192 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing *Franco*, 154 S.W.3d at 786). "If the appraisal award is not set aside, the appraisal contractual process settles the issue of damages, and settlement of the full amount owed estops the insured from bringing a breach of contract claim against the insurer." *Hurst*, 523 S.W.3d at 844 (citing *Franco*, 154 S.W.3d at 787).

Further, in this case, it is undisputed that the Appraisal Award of $24,589.42 (RCV) and $22,006.56 (ACV) issued on December 7, 2020, and Liberty timely tendered its third payment of $5,883.43 to Mr. Lee on December 14, 2021.  As a result of its post-appraisal award payment of $5,883.43 and its two pre-appraisal award payments totaling $16,668.51, Liberty paid a total of $22,551.95 to Mr. Lee, which amount, after deducting the $3,548 Policy deductible, exceeded the replacement value of $24,589.42 in the Appraisal Award by approximately $1,500.[5]  "Even putting aside labels like estoppel and waiver, there is nothing left to litigate once a plaintiff has received full damages on a claim" because "[d]amages are an element of a breach-of-contract claim." *Randel*, 9 F.4th at 268 (citing *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd*., 574 S.W.3d 882, 890 (Tex. 2019)). As Liberty has paid or tendered all that is owed for Mr. Lee's claim under the Policy, there is nothing left to litigate on his breach of contract claim that is premised on the failure to pay the amount of the covered loss under the Policy.  *See Randel*, 9 F.4th at 268.  Liberty is, therefore, entitled to judgment on this claim, which will be dismissed with prejudice.

### 2.  Extra-Contractual Claims

Liberty moves for summary judgment on all of Plaintiff's remaining extra-contractual claims.  The court determines that Liberty is entitled to judgment on all of these claims *except for Plaintiff's fraudulent claim*.

### a.  Texas Prompt Payment of Claims Act

Section 542.060 provides:

(a) Except as provided by Subsection (c), if an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary

---

[5] $24,589.42 (RCV Appraisal Award) - $3,548 (deductible) = $21,041.43.  Liberty's payments, however, totaled $22,551.95.

**Memorandum Opinion and Order – Page 17**

attorney's fees. Nothing in this subsection prevents the award of prejudgment interest on the amount of the claim, as provided by law.

(b) If a suit is filed, the attorney's fees shall be taxed as part of the costs in the case.

Tex. Ins. Code Ann. § 542.060(a)-(b).

Liberty contends that it is entitled to summary judgment on Plaintiff's TPPCA claim because its timely payment of the Appraisal Award bars this claim, and any reliance by Plaintiff on *Barbara Technologies Corporation v. State Farm Lloyds*, 589 S.W.3d 806 (Tex. 2019), is misplaced. Liberty argues that the Fifth Circuit's 2017 opinion in *Mainali* makes clear that there is no statutory violation of the TPPCA when the insurer's pre-appraisal payment is "reasonable," and *Barbara Technologies* and other courts have cited *Mainali* with approval. Def.'s Summ. J. Br. 16 (citing *Mainali*, 872 F.3d at 259).

Plaintiff disagrees and responds that the Texas Supreme Court in *Barbara Technologies* rejected *Mainali's* "*Erie* guess" that "full and timely payment of an appraisal award precludes an insured from recovery damages under the TPPCA as a matter of law." Pl.'s Summ. J. Resp. 2 (Doc. 48); Pl.'s Summ. J. Resp. Br. 9. Based on *Agredano v. State Farm Lloyds*, 975 F.3d 504, 507 (5th Cir. 2020), Plaintiff contends that: (1) the TPPCA is a strict liability statute that requires payment of penalty interest and attorney's fees whenever an insurer is liable under an insurance policy and fails to comply with the deadlines in the statute for payment of claims; and (2) there is no "reasonable pre-appraisal payment" exception to liability. Plaintiff, therefore, disagrees that Liberty's payment of the Appraisal Award or pre-appraisal payments extinguish its liability under the TPPCA. Plaintiff contends that, because Liberty failed to pay all that was owed on his claim within the statutory period before issuance of the Appraisal Award, it is liable under the TPPCA for statutory penalty interest and attorney's fees.

**Memorandum Opinion and Order – Page 18**

In addition, Plaintiff argues that Liberty's inclusion of $1,530.51 in interest in its post-appraisal payment amounts to an admission of liability for interest owed under the TPPCA because there was no contractual basis for its prepayment of such interest. Plaintiff, nevertheless, contends that, until a judgment is entered in this case, it is impossible for Liberty to prepay interest or attorney's fees to avoid liabiltiy on his TPPCA claim. Thus, according to Plaintiff, because Liberty delayed 1,315 days until after the Appraisal Award to pay all amounts owed for his claim, he is entitled to $7,580.68 in penalty interest and attorney's fees of $50,509 under the TPPCA.

After briefing on Liberty's summary judgment motion was complete, Plaintiff filed his Motion to File Supplemental Response to Liberty's Summary Judgment Motion (Doc. 66) on June 7, 2021, to address the effect of the Texas Supreme Court's opinion in *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651 (Tex. 2021). Plaintiff contends that the courts' opinions in *Hinojos*; *Shin v. Allstate Texas Lloyd's*, 848 F. App'x 173 (5th Cir. 2021) (per curiam); and *Ahmad v. Allstate Fire & Cas. Ins. Co*., 4:18-CV-4411, 2021 WL 2211799 (S.D. Tex. June 1, 2021), *adopted by* 2021 WL 1428491 (S.D. Tex. Mar. 24, 2021), "eviscerate Defendant's 'reasonable pre-appraisal payment' arguments." Pl.'s Mot. Leave 3. Specifically, Plaintiff asserts that the Texas Supreme Court's holding in *Hinojos* establishes that "an insurer's acceptance and partial payment of the claim within the statutory deadline does not preclude liability for interest and attorney's fees on amounts owed but unpaid when the statutory deadline expires." Pl.'s Supp. Summ. J. Resp. 3 (citing *Hinojos*, 619 S.W.3d at 658).

Liberty opposes Plaintiff's request to supplement his summary judgment response approximately three months after issuance of the Texas Supreme Court's opinion in *Hinojos*. Even if allowed to supplement his response, Liberty contends that Plaintiff's supplemental response mischaracterizes the holding in *Hinojos*, which continues to stand for the proposition that a

reasonable pre-appraisal payment, which is determined on a case-by-case basis, entitles the insurer to summary judgment on a TPPCA claim.  Liberty argues that, while *Hinojos* distinguished *Mainali*, it only did so because the award in *Hinojos* was ten times more than the insurer's original estimate, and "State Farm paid significantly less within the statutory deadline than the amount the appraisers ultimately determined that it owed on the claim." Def.'s Resp. to Pl.'s Mot. for Leave 3 (quoting *Hinojos*, 619 S.W.3d at 655-56).

Liberty further asserts that the Fifth Circuit's May 18, 2021 opinion in *Shin v. Allstate Lloyds* adds nothing different to the analysis because it merely cited *Hinojos* for the narrow proposition that, to be reasonable, pre-appraisal payments must "roughly correspond to the amount owed on the claim." Def.'s Resp. to Pl's Mot. for Leave 3 (quoting *Shin*, 848 F. App'x at 174). Liberty also asserts that, unlike this case, the insurer in *Shin* had not paid any interest and the appraisal award was 5.6 times the pre-award payment.  Liberty, therefore, argues that *Shin* shows that *Mainali* is still good law, and *Hinojos* does not create a new rule prohibiting summary judgment on claims for TCPPA violations in every case involving payments post-appraisal.

The court **grants** Plaintiff's Motion for Leave to File Supplemental Response (Doc. 66) and **directs** the clerk of the court to file as a separate document Plaintiff's Supplemental Response (Doc. 66-2).  Although the parties disagree whether *Hinojos* affects Liberty's entitlement to summary judgment on Plaintiff's TPPCA claim in this case, the court determines that any ruling as to Plaintiff's TPPCA claim must account for and be consistent with *Hinojos* and the opinions issued to date by the Fifth Circuit regarding *Hinojos*.  Accordingly, the court considers Plaintiff's Supplemental Response in addressing Liberty's summary judgment motion with respect to Plaintiff's TPPCA claim. The court also considers Liberty's response (Doc. 68), which addresses

Plaintiff's Motion for Leave, as well as the substantive arguments in Plaintiff's Supplemental Response.

The Texas Supreme Court issued its opinion in *Hinojos* on March 19, 2021. In reversing the court of appeals' summary judgment ruling in favor of the insurer, the court explained:

> Chapter 542 [of the Texas Insurance Code] does not provide that a partial payment of a valid claim discharges liability for statutory interest. Accordingly, we hold that an insurer's acceptance and partial payment of the claim within the statutory deadline does not preclude liability for interest on amounts owed but unpaid when the statutory deadline expires.
>
> Our holding accords with our past decisions in [*Republic Underwriters Insurance Company v. Mex-Tex, Incorporated*, 150 S.W.3d 423 (Tex. 2004), *Barbara Technologies Corporation v. State Farm Lloyds*, 589 S.W.3d 806 (Tex. 2019), and *Alvarez v. State Farm Lloyds*, 601 S.W.3d 781 (Tex. 2020)], as well as the statute's stated purpose of "promot[ing] the prompt payment of insurance claims." [Tex. Ins. Code Ann. § 542.054]. By requiring insurers to promptly satisfy claims that they owe in their entirety, the [Texas] Legislature incentivizes insurers to resolve disputes and invoke the appraisal process sooner rather than later. Although the statute says nothing about reasonableness, a reasonable payment should roughly correspond to the amount owed on the claim. When it does not, a partial payment mitigates the damage resulting from a Chapter 542 violation. Interest accrues only on the unpaid portion of a claim.

*Hinojos*, 619 S.W.3d at 658 (footnotes omitted).

On August 12, 2021, the Fifth Circuit in *Randel* addressed the issue of whether, post-*Hinojos*, an insurer can be liable under the TCPPA "for failing to timely pay the full damages it owed even though it timely made sizeable payments in response to the claim." *Randel*, 9 F.4th at 265. It concluded that, while "[p]ayment and acceptance of an appraisal award means there is nothing left for a breach of contract claim seeking those same damages[,] . . . a plaintiff may still have a claim under the [TPCCA] after it accepts an appraisal award" based on the holding in *Hinojos* that "even a pre[-]appraisal payment that seemed reasonable at the time does not bar a prompt-payment claim [unless it] 'roughly correspond[s]' to the amount ultimately owed." *Id.* at 265-66 (quoting *Hinojos*, 619 S.W.3d at 658). Based on *Hinojos*'s holding that, to be reasonable

a pre-appraisal payment must "roughly correspond to the amount owed on the claim," the court in

*Randel* reversed the district court's summary judgment in favor of Travelers, reasoning as follows:

> An insured's payment of an appraisal award may defeat a contract claim, but it does not automatically prevent a prompt-payment claim. *Barbara Techs*., 589 S.W.3d at 822. That is because an insurer may be liable under the [TPPCA] even when it pays in full if that payment was not timely. *Id.* The statute provides that the insurer, upon receiving all requested information necessary to evaluate the claim, must pay the claim within 60 days. Tex. Ins. Code § 542.058(a). If the full payment occurs after that deadline, the insurer is responsible for 18 percent interest through the date of payment and attorney's fees. *Id.* at § 542.060(a).

> The district court dismissed the prompt-payment claim relating to dwelling and personal property coverage because although Travelers' early payments were less than the amount it ultimately owed, the early payments were in an amount it deemed reasonable. That ruling is understandable given the state of the law when the district court ruled. A few years ago, we made an *Erie* guess that the Supreme Court of Texas would not impose prompt-payment liability so long as a timely pre[-]appraisal payment of the claim was for a "reasonable" amount. *Mainali Corp. v. Covington Specialty Ins. Co*., 872 F.3d 255, 259 (5th Cir. 2017). Determining whether the *Mainali* pre[-]appraisal payment was reasonable was easy—that insurer paid more pre[-]appraisal than it ultimately owed. *Id.* But like the district court here, courts applying *Mainali* found pre[-]appraisal payments to be reasonable even when the amounts were significantly less than what was ultimately owed. *See, e.g., Gonzalez v. Allstate Vehicle and Prop. Ins. Co.*, 474 F. Supp. 3d 869, 876 (S.D. Tex. 2020) (finding reasonable an insurer's pre[-]appraisal payment 8.12 times smaller than the appraisal award); *Crenshaw v. State Farm Lloyds*, 425 F. Supp. 3d 729, 740 (N.D. Tex. 2019) (finding reasonable an insurer's pre[-]appraisal payment 3.64 times smaller than appraisal award).

> While this case was on appeal, the Supreme Court of Texas provided the answer we could only guess at four years ago. It held that that "a reasonable payment should roughly correspond to the amount owed on the claim." *Hinojos*, 619 S.W.3d at 658. Because the insurer in *Hinojos* paid "significantly less within the statutory deadline than the amount the appraisers ultimately determined that it owed on the claim"—the difference being $23,000, *id.* at 654—its payment was not timely. *Id.* at 657 n.34. Although the result in *Mainali* still stands given that it involved an overpayment, the reasonableness standard it applied turned out to be too broad. We now know that to avoid prompt-payment liability, a pre[-]appraisal payment must "roughly correspond" to the amount ultimately owed. *Id.* at 658.

> Today we need not decide just how close a pre[-]appraisal payment needs to be to "roughly correspond" with the final amount owed. There is a substantial gap of roughly $185,000 between the pre[-]appraisal dwelling and personal property payments and the appraisal award. That difference is much greater than

> the *Hinojos* underpayment. Indeed, Travelers now concedes that its pre[-]appraisal
> payment was not reasonable given the recent guidance from the state high court.
> Travelers' pre[-]appraisal payment thus is not a defense to liability under the
> [TPPCA]. As a result of this recent clarification of Texas law, the claim seeking
> interest for late payment of dwelling coverage must be remanded.

*Randel*, 9 F.4th at 268.   Thus, the Fifth Circuit in *Randel* confirmed that, although the

reasonableness standard it applied in *Mainali* turned out to be too broad, reasonableness is still the

test for determining whether an insured is entitled to damages in the form of interest (and attorney's

fees) under the TCPPA, with the caveat that post-*Hinojos*, "to avoid prompt-payment liability, a

pre[-]appraisal payment [to be reasonable] must 'roughly correspond' to the amount ultimately

owed." *Id.* (quoting *Hinojos*, 619 S.W.3d at 658).

   As previously discussed, the undisputed evidence in this case establishes that, as a result

of Liberty's post-appraisal payment of $5,883.43, the total amount paid to Mr. Lee ($22,551.95)

exceeded the appraiser's replacement value (after deducting the $3,548 Policy deductible) by

approximately $1,500.  Liberty paid $16,668.52 pre-appraisal after deducting for the deductible.

Only $13,881.47, however, was initially paid by Liberty during the 60 days after Mr. Lee first

reported his claim, and Liberty does not contend that it did not have all information needed at this

time to evaluate his claim.  Tex. Ins. Code § 542.058(a). Accordingly, the court only considers this

amount in determining whether Liberty's pre-appraisal payment "roughly corresponds" with the

final amount owed.  Liberty's $13,881.47 payment is approximately 65% of the final amount owed

post-appraisal after deducting for the Policy deductible.[6]

   The Texas Supreme Court and the Fifth Circuit have not yet clarified how close a pre-

appraisal payment needs to be to "roughly correspond" with the final amount owed for an insurer

---

[6] $24,589.43 (Appraisal Award RCV) - $3,548 (deductible) = $21,041.43.  $13,881.47 (June 22, 2017 payment) ÷ $21,041.43 = .65 or 65% (percentage of claim paid pre-appraisal).

to avoid liability under the TCPPA.  After comparing the facts of this case to those in *Randel* and *Hinojos*, however, the court determines that, even if it only considers Liberty's pre-appraisal payment of $13,881.47 that was made within 60-day statutory window, this payment "roughly correspond[s]" with the final amount owed to Plaintiff for his claim under the Policy.

In *Randel*, there was a difference of approximately $185,000 between the appraisal award and what was paid pre-appraisal. *Randel*, 9 F.4th at 268. In *Hinojos*, there was a difference of $15,295 between the appraisal award and pre-appraisal payments. The appraisers valued Hinojos's loss at $38,269.95 on a replacement cost basis.  One week later, State Farm "tendered an additional $22,974.75, reflecting payment of the appraisal award net of the earlier payment it made to Hinojos, the deductible, and depreciation." *Hinojos*, 619 S.W.3d at 654.  The tendered post-appraisal payment in *Hinojos* represented approximately 60% of the award amount.  Here, on other hand, after deducting for the Policy deductible, Liberty paid or tendered approximately 65% in payments pre-appraisal within 60 days after Plaintiff first reported his claim, and it owed only approximately $4,371.91 or approximately 20% of the claim post-appraisal.[7]

Consideration of *Shin* and *Ahmad* cited in Plaintiff's Supplemental Response does not affect the court's determination in this regard.  *Shin* is an unpublished one-page opinion in which the Fifth Circuit vacated the judgment and remanded the case to the district court given the Texas Supreme Court's ruling in *Hinojos*.  *Shin*, 848 F. App'x at 174.  *Shin* quoted pertinent language in *Hinojos* but did not comment on the merits of the appeal, except to note that "the final appraisal amount ($25,944.94) was 5.6 times greater than the pre-appraisal payment of $4,616.63." *Id.* This large difference alone distinguishes *Shin* from the facts in this case, even absent any discussion by

---

[7] $24,589.43 (Appraisal Award RCV) - $3,548 (deductible) = $21,041.43.  $21,041.43 – 16,668.52 (pre-appraisal payments) = $4,371.91 (remaining amount owed post-appraisal).  $4,371.91 ÷ $21,041.43 = .20 or 20% (amount owed on claim post-appraisal).

**Memorandum Opinion and Order – Page 24**

the Fifth Circuit. *Ahmad* is distinguishable for similar reasons, as it is an unpublished opinion out of the Southern District of Texas and involved an appraisal award of $28,618.21 on a replacement cost basis and a pre-appraisal payment of only $3,446.53. *Ahmad*, 2021 WL 2211799 at *1. Thus, neither is binding precedent and both are distinguishable.

Accordingly, the court determines that Liberty has no prompt-payment liability under the TPPCA because the undisputed facts in this case establish that its first pre-appraisal payment of $13,881.47 that was made within the statutory period "roughly correspond[s]" with the amount it owed on Plaintiff's claim post-appraisal. *See Randel*, 9 F.4th at 268 (quoting *Hinojos*, 619 S.W.3d at 658). Plaintiff has, therefore, failed to raise a genuine dispute of material fact as to this claim, and Liberty is entitled to judgment as a matter of law.

### b.     Remaining Extra-Contractual "Bad Faith" Claims

Liberty contends that it is entitled to summary judgment on all of Plaintiff's remaining extra-contractual bad faith claims because the only damages pleaded by him are those for actual damages to his Property, and there is no evidence that he suffered any injury independent from the alleged denial of Policy benefits. Liberty, therefore, contends that Plaintiff's common law and statutory extra-contractual claims fail as a matter of law.

Plaintiff disagrees and responds that he has suffered an independent injury beyond Policy benefits. Plaintiff contends that he incurred $1,500 in pre-appraisal damage assessments paid to consulting experts that have not been paid by Liberty, and that "[t]these expenses would not have been incurred if [Liberty] did not breach its duties under the [P]olicy." Pl.'s Summ. J. Resp. Br. 17 (Doc. 55). For support, Plaintiff relies on his declaration in which he states, "[b]y my calculation I've suffered damages in at least the amount of $4,209.66 (contractors' overhead and profit) and $1,500 for pre-appraisal damage assessments as a result of Liberty's breach of contract.

**Memorandum Opinion and Order – Page 25**

These damages have not been paid." *Id.* (citing Pl.'s Summ. J. Resp.  App. 26 ¶ 8).  Plaintiff, therefore, contends that Liberty's motion as to this claim should be denied because it is liable for "a breach separate from the initial valuation and [he] has suffered actual damages in the amount of $1,500." *Id.*

Plaintiff's remaining extra-contractual claims are for alleged DTPA violations, breach of the common law duty of good faith and fair dealing, breach of express and implied warranty; and common law fraud.  Plaintiff's DTPA claim is based on his contention that: (1) Mr. Yoon misrepresented the terms of the Policy regarding coverage, as well as the cause and extent of the damage to his Property; and (2) Liberty failed to promptly provide a reasonable explanation of its denial of his claim and refused to pay the claim without conducting a reasonable investigation. Pl.'s Am. Pet. ¶¶ 34-38.  Plaintiff's good faith and fair dealing claims is based on his contention that Liberty's investigation of his claim was conducted to provide a pretextual basis for denying or underpaying his claim, and a reasonable insurer would not have delayed or denied his claim. *Id.* ¶¶ 40-44. Regarding his breach of warranty claim, Plaintiff contends that Liberty breached express and implied warranties by representing that claims will be processed promptly, and hail and windstorm claims will be paid in full minus the deductible.  *Id.* ¶¶ 50-52. Regarding his fraud claim, Plaintiff contends that Liberty: "duped [him into purchasing the Policy] but failed to disclose that it will never pay for general contractors' overhead and profit associated with roof repairs under any circumstances"; that he would not have purchased the Policy if this information had been disclosed; and that he was "injured as a result of Liberty's [] fraudulent concealment" of such information "because he incurred the expense of a general contractor and expected to be reimbursed." *Id.* ¶¶ 54-58.  Plaintiff contends that he also "incurred damages" with respect to his DTPA claim, but he does not provide any details regarding these damages.  *Id.* ¶ 38.  He does not

indicate in his pleadings that he suffered any damages in connection with his breach of warranty and good faith and fair dealing claims.

Under Texas law, an individual damaged by "unfair method[s] of competition or unfair or deceptive act[s] or practice[s] in the business of insurance" may bring a cause of action under the Insurance Code. Tex. Ins. Code Ann. § 541.151. "The prohibited conduct includes 'failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear.'" *Performance Autoplex II Ltd. v. Mid–Continent Cas. Co*., 322 F.3d 847, 860-61 (5th Cir. 2003) (quoting Tex. Ins. Code Ann. § 541.151). A violation of Chapter 541 of the Texas Insurance Code is also a violation of the DTPA. Tex. Bus. & Com. Code § 17.50(a)(4).

Mr. Lee received benefits under his Policy as a result of Liberty's payments on June 22, 2017, and June 29, 2018. Liberty also tendered a third payment to Mr. Lee based on the Appraisal Award. This post-appraisal payment represented the difference between what had been paid and what remained owed, plus an additional $1,500. Mr. Lee does not argue that he is entitled to benefits beyond those awarded by the appraisers in the Appraisal Award. Thus, to recover any damages beyond policy benefits, Mr. Lee must establish that Liberty's alleged violations of the DTPA and breaches of warranty and good faith and fair dealing caused an injury that is independent from the loss of benefits. *See USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018) (explaining that an "insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties."); *Hurst*, 523 S.W.3d at 848. When an insured's damages "flow" or "stem" from the denial of a claim for policy benefits or "are predicated on" the denial of policy benefits, recovery for extra-contractual claims is precluded unless the policy entitles the insured

to those benefits.  *Menchaca*, 545 S.W.3d at 500. Regardless of whether an insured is entitled to benefits under the policy, he or she may not recover damages for a statutory violation unless that violation causes an injury "independent from the loss of the benefits." *Id.* at 499-500.  Successful independent injury claims are "rare."  *Id*. at 500 (citing *Mid–Continent Cas. Co. v. Eland Energy, Inc*., 709 F.3d 515, 521-22 (5th Cir. 2013)).

Here, Plaintiff takes the position in response to Liberty's summary judgment motion and in his declaration that the $1,500 for pre-appraisal damage assessments and $4,209.66 for contractor overhead and profit "result[ed] from Liberty's breach of the contract" or "breach[es of] its duties under the [P]olicy."  Pl.'s Summ. J. Resp. Br. 17; Pl.'s Summ. J. Resp.  App. 26 ¶ 8.  As a result, he acknowledges that these damages "flow" or "stem" from Liberty's handling of his claim under the Policy.  Consequently, these damages do not qualify as independent injuries, and he cannot recover on any of his extra-contractual claims based on these damages.  *See Menchaca*, 545 S.W.3d at 500.  Moreover, the statement in Mr. Lee's declaration—"[b]y my calculation I've suffered damages in at least the amount of $4,209.66 (contractors' overhead and profit) and $1,500 for pre-appraisal damage assessments as a result of Liberty's breach of contract. These damages have not been paid"—is conclusory and insufficient to raise a genuine dispute of material fact as to whether he suffered an independent injury as required to support his extra-contractual claims.  *See Eason*, 73 F.3d at 1325.   Further, the conduct that forms the basis for Plaintiff's claims for alleged DTPA violations, breach of the common law duty of good faith and fair dealing, and breach of express and implied warranty is not the type of egregious or "extreme" conduct normally required to support an extra-contractual claim based on an independent injury.  *See Menchaca*, 545 S.W.3d at 500 (quoting *Mid–Continent Cas. Co.*, 709 F.3d at 521-22).

Accordingly, the court determines that Liberty is entitled to judgment as a matter of law on Plaintiff's extra-contractual "bad faith" claims that are based on alleged DTPA violations, breach of the common law duty of good faith and fair dealing, and breach of express and implied warranty, and these claims will be dismissed with prejudice. The court, however, will deny Liberty's summary judgment motion as to Plaintiff's extra-contractual claim for common law fraud, which as noted, is premised on his contention that he was fraudulently induced to purchase the Policy. Unlike Plaintiff's other extra-contractual claims, this claim does not fall neatly into the "bad faith" claim category, and the global legal arguments Liberty makes with respect to all of Plaintiff's extra-contractual bad faith claims does not adequately address this claim.

Thus, for all of the reasons explained in this section, Liberty's summary judgment motion is **granted** with respect to all claims asserted by Plaintiff in this action, *except with respect to his fraudulent inducement claim*.

### IV.    Plaintiff's Summary Judgment Motion (Doc. 45)

Plaintiff moved for summary judgment only as to his TPPCA claim. The court **denies** Plaintiff's Motion for Partial Summary Judgment for essentially the same reasons it has determined that Liberty is entitled to judgment as a matter of law on this claim. In ruling on Plaintiff's summary judgment motion, it does not consider the evidence submitted in support of Plaintiff's reply that was filed without leave of court. *See Springs Indus., Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239-40 (N.D. Tex. 1991) (explaining that, when "a movant has injected new evidentiary materials in a reply without affording the nonmovant an opportunity for further response," the court may in its discretion decline to consider them). Moreover, like Plaintiff's summary judgment response evidence, much of this evidence violates the prohibition against lawyers acting as witnesses regarding contested matters, which is precisely what Plaintiff's

attorney is attempting to do here in an effort to raise a genuine dispute of material fact regarding Plaintiff's TPPCA claim. *FDIC v. United States Fire Ins. Co.*, 50 F.3d at 1311.

## V.    Conclusion

For the reasons explained, the court **grants** Plaintiff's Motion for Leave to File Supplemental Response (Doc. 66) and **directs** the clerk of the court to file as a separate document Plaintiff's Supplemental Response (Doc. 66-2); **grants** Defendants' Motion to Dismiss (Doc. 38) and **dismisses with prejudice** all claims against David Yoon; **grants in part** Liberty's Motion for Summary Judgment (Doc. 32) and **dismisses with prejudice** all claims asserted against by Plaintiff, *except for his fraudulent inducement claim*; and **denies** Plaintiff's Motion for Partial Summary Judgment (Doc. 45).  As a result of the court's rulings, all claims asserted by Plaintiff in this case against Liberty for breach of contract breach of contract; alleged DTPA violations; breach of the common law duty of good faith and fair dealing; alleged TPPA violations; breach of express or implied warranty; and fraud, *except for Plaintiff's fraudulent inducement claim*, are **dismissed with prejudice**.  Accordingly, as a result of the court's rulings on these motions, only Plaintiff's fraudulent inducement claim remains.  Therefore, the parties should seriously consider resolving this case without a trial.  The court has ruled, and the parties now have sufficient information to understand the strengths and weaknesses of their respective positions such that the case and remaining claim should be settled without further litigation and without the parties incurring additional attorney's fees beyond what is reasonable and necessary.

**It is so ordered** this 30th day of September, 2021.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 30**